Simonson v. Martin

*Sidney L. Krawitz*, for plaintiffs.

*Robert W. Cunliffe, J. Dempsey, J. J. Kilimnik* and *Frank E. Roda*, for defendants.

DAVIS, P. J., October 15, 1963.—On May 18, 1958, counsel for defendants filed a petition for a rule to strike off a default judgment entered February 15, 1957, against defendant Joseph J. Lawler, together with a petition for a rule to open two default judgments entered February 15, 1957, against defendants Ernest Appert and Leslie Martin. Each of the three judgments had been entered in favor of plaintiffs, Robert George Simonson and his wife, Janet Louise Simonson, in a trespass action brought December 20, 1956, to recover for personal injury and property damage suffered by plaintiffs in an accident which occurred October 30, 1955, in Lackawaxen Township, Pike County, Pa. From the complaint, it appears that plaintiff, accompanied by his wife, was driving his 1947 Chevrolet automobile along Route 958 at 2:15 o'clock on the morning of October 30th. A section of the road had been washed out by Hurricane Diane, August 17th to 18th, 1955, creating a drop of approximately 60 feet from the original level of the road to the bottom of the wash-out. Plaintiff's car plunged over the edge of the wash-out, the automobile was demolished, and both plaintiffs were seriously injured. Briefly, the negligence charged was the alleged failure of defendants to erect barricades or warning devices which might have prevented the accident. At the time of the occurrence, defendant Joseph J. Lawler was Secretary of Highways of the Commonwealth of Pennsylvania, defendant Ernest Appert was Highway

Superintendent for Pike County, and defendant Leslie Martin was caretaker of roads for Lackawaxen Township. Answers to the petitions were filed and depositions were taken.

At argument, counsel for defendants attacked the validity of all three judgments upon two grounds: (1) This court had no jurisdiction to entertain the judgments because Pa. R. C. P. 1503 (c) vests exclusive jurisdiction of this action in the Court of Common Pleas of Dauphin County; and (2) plaintiffs failed to give defendants the notice required by Pa. R. C. P. 2082 prior to taking judgment by default. Neither of these grounds has merit.

Determination of the question of jurisdiction depends fundamentally upon whether or not the proceeding is an action against the Commonwealth. A proceeding falls within that category whenever a judgment or decree entered therein will operate to control the action of the Commonwealth or subject it to liability: Downs v. Lewis, Secretary of Highways, 17 D. & C. 427, 429 (C. P. Bucks Co., 1932). In such proceedings, the appropriate State officer is an indispensable party defendant: Ibidem, page 431; Merner v. Department of Highways, 375 Pa. 609, 612 (1954); and see Powell v. Shepard, 381 Pa. 405 (1955). Jurisdiction of the proceedings is governed by the Act of May 26, 1931, P. L. 191, no. 116. Section 1 of the act, 12 PS §104, provides:

"For the purposes of this Act, the term 'State officer,' when used herein, shall mean the head of any administrative department or the chief executive officer of any independent administrative board or commission of the Commonwealth."

Section 2 of the act, 12 PS §105, provides:

"All actions at law or in equity by which it shall be sought to compel a State officer to perform or to restrain him from performing any official act in the

execution of the laws of the Commonwealth shall be instituted in the court of common pleas of Dauphin County, and, for such purpose, jurisdiction of all such actions is conferred upon that court."

To the limited extent that these sections apply to actions in equity, Pa. R. C. P. 1550 (24) provides that they are superseded by Pa. R. C. P. 1503 (c) ; but, as to the instant proceeding, which is an action in trespass, the act remains in full force and effect. Where the proceeding in question is an action against the Commonwealth, the appropriate "State officer" as defined by section 1 of the act is an indispensable party and, when he has been joined, it follows by application of section 2 that exclusive jurisdiction is vested in the Court of Common Pleas of Dauphin County. Accordingly, it has been held that courts other than that of Dauphin County have no jurisdiction of actions against the Commonwealth which have been brought against the following types of defendant: an agent of the Department of Agriculture: Shoey v. Jones, 65 D. & C. 301 (C. P. Crawford Co., 1948) ; a district engineer of the Department of Highways: Zaengle v. Buckius, District Engineer, 20 D. & C. 373 (C. P. Carbon Co., 1933) ; a district engineer and foreman employed by the Department of Highways; Zaengle v. Smith, 20 D. & C. 434 (C. P. Carbon Co., 1934) ; a contractor carrying out directions issued by the Secretary of Highways: Kostusiak v. Brayman, 19 Beaver 56 (C. P. Beaver Co., 1957) ; Faxon Land Company v. Laubach, 7 D. & C. 2d 32 (C. P. Lyc., 1956) ; Hinnershitz Cemetery Company v. Miller, 32 Berks 185 (C. P. Berks Co., 1940) ; and a contractor carrying out the directions of the Pennsylvania Turnpike Commission; Bear Creek Realty Co., Inc. v. Badgett Mine Stripping Corporation, 7 D. & C. 2d 49 (C. P. Luzerne Co., 1956). But see Commonwealth ex rel. Bonno v. Hilbish, 23 Northumb. 112 (1951), holding

that officers of a township school district are not State officers under the Act of 1931, P. L. 191, 12 PS §104.

The instant proceeding is not, however, an action against the Commonwealth. Plaintiffs are not seeking to control State action or to impose State liability, but to recover damages from defendants, as individuals, for alleged negligence in performance of official duty. The jurisdiction of courts other than that of Dauphin County to entertain such actions is well recognized. In Hutchison v. Mitterling, 2 D. & C. 2d 793 (C. P. Huntingdon Co., 1955), an action of trespass was brought against the chief veterinarian of the Department of Agriculture to recover damages for the destruction or conversion of plaintiff's cattle. The court overruled preliminary objections to the complaint and Himes, P. J., said:

"This action in trespass does not seek to compel defendant or any State officer to *perform* any official act; neither does it seek to *restrain* defendant or any *State* officer from performing any official act. It seeks only one thing: to recover damages from defendant for acts plaintiff alleges defendant performed unlawfully and without any legal right. It is believed that the exclusive jurisdiction conferred upon the Common Pleas Court of Dauphin County by the Act of 1931 [12 P.S. sec. 105] cannot be extended to include suits instituted solely for the recovery of damages against individuals merely because the individuals were acting as agents, employes or officers of the Commonwealth engaged in effecting the laws of the Commonwealth at the time of the commission of the alleged unlawful acts."

The Hutchinson decision is in accord with the ruling of the Superior Court in Meads v. Rutter, 122 Pa. Superior Ct. 64 (1936), a trespass action based upon the collision of plaintiffs' automobile with the rear end of a snow plow operated by defendant, an

6

employe of the Pennsylvania Department of Highways. In affirming judgment for the wife plaintiff, Baldrige, J., later P. J., said:

"An employee or officer of the Commonwealth is not a member of a privileged class—exempt from liability for his individual tort. It would be unfortunate, indeed, if one, who has sustained a wrong by an individual, would be remediless and not able to sue him the same as any other citizen because he was an agent, officer or employee of the Commonwealth. Like all others, he must personally answer for his wrongful acts, as the doctrine of respondeat superior does not prevail against this Commonwealth. The rule that a state is not liable for the negligence or misfeasance of its officers or agents, except where the legislature voluntarily assumes liability, is well recognized: 25 R. C. L. 407, section 43. See, also, Collins v. Com., 262 Pa. 572, 106 A. 229. 'The immunity of the state does not extend to its officers, and as a general rule state officers and agents are personally liable in tort for unauthorized acts committed by them in the performance of official duties:' 59 C. J. 146, section 228."

The jurisdiction of the Court of Common Pleas of Centre County to entertain an action of trespass against employes of the Department of Highways was sustained in Watson v. Barnhart, 33 D. & C. 290 (C. P. Centre Co., 1938). The facts of that case present a number of analogies to the instant proceeding. The action was brought against the County Superintendent of Highways and the road foreman of the section where the accident occurred. The statement of claim alleged that defendants had caused guardrail post holes to be dug and had permitted them to remain open without signs or signal lights, and that plaintiff fell into one of the holes and was injured. In actions coming within this category, the Commonwealth not only fails to qualify as an indispensable party, but in

fact is an improper party defendant. Where plaintiff in a trespass action to recover damages for injuries sustained when plaintiff was struck by a police car operated by a State police officer, and both the officer and the Commonwealth were joined as parties defendant, the court struck the Commonwealth from the record and permitted the action to proceed against the officer: Conrad v. Collub, 53 D. & C. 200 (C. P. Lehigh Co., 1944).

From the foregoing authorities, it is clear that this court had jurisdiction of the cause of action. It is also clear that the court obtained jurisdiction over defendants Ernest Appert and Leslie Martin, served personally at their respective residences in Pike County. Service on defendant Joseph J. Lawler, however, was invalid. The return of Otto Winkler, Jr., Sheriff, reads as follows:

"I also hereby certify and return that I served the within complaint in Trespass upon the within named Joseph J. Lawler by personally handing to and leaving with Ernest Appert, agent for the said Joseph J. Lawler, a true and attested copy of the same at the residence of the said Ernest Appert, in Glen Eyre, Lackawaxen Township, Pike County, Commonwealth of Pennsylvania, on the 27th day of December, 1956, and made known to him the contents thereof."

Pa. R. C. P. 1009 (b) (2) provides:

"When the defendant is an individual, the writ of summons, or the complaint if the action is commenced by complaint, may be served

. . .

"(2) by handing a copy

. . .

"(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof."

The office of defendant Joseph J. Lawler was in

Harrisburg, and it appears from an averment in the complaint that his residence was located in the same city. Attempted service upon him by handing a copy of the complaint to his agent *at the agent's residence* is patently not in compliance with Pa. R. C. P. 1009. It is therefore void: Branch v. Foort, 397 Pa. 99, 101 (1959) ; and the judgment against defendant Joseph J. Lawler falls with it: Nahrgang v. Nahrgang, 86 D. & C. 135 (C. P. No. 6 Phila. Co., 1953). Laches does not protect a void judgment: Romberger, to use v. Romberger, 290 Pa. 454, 457 (1927). While this specific ground was not raised in the petition or briefs, the court may of its own motion strike a judgment which is void on its face: Roxy Auto Company v. Moore, 180 Pa. Superior Ct. 603, 605 (1956) ; Loprete v. Langcliffe Collieries, Inc., 67 D. & C. 438 (C. P. Lackawanna Co., 1948).

The second ground for voiding the judgments, advanced by counsel for defendants, is that plaintiffs failed to give defendants the special notice required by Pa. R. C. P. 2082, which provides:

"No judgment shall be entered against a defendant who has not been personally served or who has not appeared as a party in the action until the plaintiff has given the defendant such notice as the court by general rule or special order shall direct."

The rule is found in a chapter bearing the heading "Defendants Who Are Non-Residents or Conceal Their Whereabouts"; and Pa. R. C. P. 2077, found in the same chapter, provides:

"(a) The rules of this chapter apply to

"(1) actions as to which the laws of this Commonwealth authorize service of process upon a non-resident, or a resident who becomes a non-resident or who conceals his whereabouts; and

"(2) actions as to which the laws of this Commonwealth authorize service of process upon a non-

resident individual engaged in business within the Commonwealth."

The rule therefore has no application to the instant case, in which all three defendants are residents of the Commonwealth: Drury v. Zingarelli, 198 Pa. Superior Ct. 5 (1962); Sutton v. Alexander, 79 Montg. 320 (C. P. Montg. Co., 1961), affirmed by the Superior Court in 198 Pa. Superior Ct. 53 (1962). In the Drury case, service had been made upon defendant by handing a true and attested copy of the complaint at defendant's residence to defendant's mother-in-law. The lower court had opened a default judgment entered against defendant on the authority of Pa. R. C. P. 2082. On appeal, the Superior Court reversed, and Montgomery, J., said:

"That rule [Pa. R. C. P. 2082] applies only to 'Defendants who are non-residents or conceal their whereabouts.' We find nothing in the Rules of Civil Procedure requiring notice to be given to a party against whom a judgment is about to be entered or damages assessed. Rule 1047, providing for judgment in default of an appearance contains no requirement for notice."

Disposition of this point makes it unnecessary to consider the petition of defendant Leslie Martin to amend the sheriff's return of service so as to show that the copy of the complaint was handed, not to Leslie Martin personally, but to his wife. In either event, the service was valid: Drury v. Zingarelli, 198 Pa. Superior Ct. 5, 8, 9 (1962).

We next pass to consider the petition to open judgment. The court would have been justified in refusing to entertain this petition. Section 1 of the Act of April 9, 1915, P. L. 72, 12 PS §514, provides:

"A judge of any court of record shall not, in any matter, case, hearing, or proceeding before him, receive or consider any petition, or paper in the nature of a petition, alleging any matter of fact, unless the

petition or paper is duly verified as to such allegations."

Pa. R. C. P. 206, effective March 20, 1939, continues the statutory provision and extends it to answers as well as petitions. It provides:

"Every petition and answer containing allegations of fact which do not appear of record shall be verified by affidavit."

In Shenango Valley Transportation Company v. Stokes (No. 1), 87 D. & C. 486 (C. P. Mercer Co., 1954), decided after Pa. R. C. P. 206 became effective, the court held that a petition to open judgment, supported only by the affidavit of defendant's counsel, was not properly verified under the Act of 1915 and discharged the rule.

In the instant case, the verification of the petition to open judgment was made by Jacob J. Kilimnik, Esq., one of the attorneys for defendants. While it contains a statement that he was authorized to make it on their behalf, it does not set forth the source of his information or any reason for the failure of petitioners to make the affidavit themselves. Defective verification has been held to deprive the court of jurisdiction to consider a petition for a recount of ballots under the Election Code of June 3, 1937, P. L. 1333, 25 PS §3261; Taylor Township Election, 79 D. & C. 193, 198 (C. P. Fulton Co., 1951); but see Noll Appeal, 27 D. & C. 2d 780 (C. P. Berks Co., 1962), holding that a defective verification to a petition for appeal from a decision of a board of elections may be amended. In Borteck v. Goldenburg, 87 Pa. Superior Ct. 602, 604, 605 (1926), the Superior Court held that the lower court had not abused its discretion in discharging a rule to open because of defective verification. The court did not discuss the jurisdictional question, but pointed out that no depositions had been taken in support of the petition. In the instant case, deposi-

tions were taken and we have the benefit of the sworn testimony of both defendants Appert and Martin. For that reason, we will proceed with consideration of the merits of the petition.

An application to open judgment is to be adjudicated upon the basis of equitable principles; it is addressed to the sound discretion of the court and, on appeal, the order of the court below will be reversed only for clear abuse of discretion: Smith v. Dale, 405 Pa. 293, 175 A. 2d 78, 80 (1961); Britton v. Continental Mining & Smelting Corp., 366 Pa. 82, 76 A. 2d 625, 627 (1950); Colacioppo v. Holcombe, 166 Pa. Superior Ct. 186, 188 (1950). The relief sought is by way of grace and not of right: Brigham v. Eglin's of Philadelphia, Inc., 406 Pa. 99, 101 (1962); see Pinsky v. Master, Administratrix, 343 Pa. 451, 453 (1942). The court is not required to open a judgment merely because defendant produces evidence which, if true, would constitute a defense: Steigleman v. Sciotto, 388 Pa. 113, 114 (1957); Berkowitz v. Kass, 351 Pa. 263, 264 (1945). The general principle has been concisely stated by Mr. Justice Walling in Fuel City Mfg. Co. v. Waynesburg Products Corporation, 268 Pa. 441, 444 (1920):

"It is well settled in Pennsylvania, that relief will be granted from a judgment entered by default, as a result of the mistake or oversight of counsel, where application is promptly made, a reasonable explanation or excuse for the default offered, and a defense shown upon the merits."

The first two considerations are subdivisions of the question of laches, that is, whether the application was made with sufficient promptness under the circumstances revealed by the explanation offered. To the last consideration, there should be added a fourth: whether the opening of the judgment would be prejudicial to plaintiffs: Texas and Block House Fish and Game Club

v. Bonnell Run Hunting and Fishing Corporation, 388 Pa. 198, 203, 204 (1957).

It is clear that both defendants and their counsel acted with unimpeachable promptness in filing the petition to open judgment after defendants first learned that default judgments against them as individuals had been entered. On May 8, 1958, Robert W. Cunliffe and Thomas J. Dempsey, Assistant Attorneys General assigned to the Department of Highways, were in the chambers of this court at Stroudsburg to confer with reference to another case when we called their attention to the instant proceedings in Pike County. As a result, the matter was reported to John R. Rezzolla, Jr., Chief Counsel to the Secretary of Highways, at Harrisburg, who then made arrangements to have Jacob J. Kilimnik, Assistant Attorney General, appear in behalf of defendants. On May 13, 1958, Mr. Kilimnik and Mr. Cunliffe conferred with defendant Ernest Appert at the [Scranton] district office of the Department of Highways and discussed with him everything he knew about the site of the accident and the instant proceedings. At that time, defendant Appert authorized Mr. Kilimnik and the legal staff of the Department of Highways to represent him. Defendant Leslie Martin, first learning of the default judgment sometime in May, 1958, made a similar authorization. On May 15, 1958, Robert W. Cunliffe, Thomas J. Dempsey, Jacob J. Kilimnik and Frank E. Roda, Assistant Attorneys General of the Department of Highways, entered their appearances for defendants and, on May 19, 1958, filed the instant petition to open judgment.

The period of default requiring scrutiny and explanation is the one extending from service of process to May 8, 1958. Defendant Appert was served on December 27, 1956, and defendant Martin on January 9, 1957. Ordinarily, due diligence would require them promptly to consult local counsel and arrange for rep-

resentation and defense. See DiSanto v. Dowd, 14 D. & C. 2d 5 (C. P. Montgomery Co., 1958); and dissenting opinion of Montgomery, J., in Charles J. Webb Sons Co., Inc. v. Webber, 194 Pa. Superior Ct. 614 (1961). Where a defendant, misled by the erroneous status reports of his first attorney, diligently sought representation by a succession of attorneys before he was able to secure his present counsel, the court granted his petition to open judgment: Shultz v. Zoretski, 28 Northumb. 110 (C. P. Northumberland County, 1956). Where defendant temporarily mislaid the complaint for 13 days after service, thus contributing to the delay, and counsel assumed full responsibility for failure to defend promptly, the court opened the judgment: Seiscio v. Clarke, 4 D. & C. 2d 261 (C. P. Montgomery Co., 1955); but where the delay was squarely chargeable to defendant's conduct, the court refused to open judgment: Rabben v. Steinberg, 20 D. & C. 2d, 283, 288 (M. C. Phila., 1960); affirmed: 192 Pa. Superior Ct. 243 (1960).

The instant case represents a departure from the ordinary pattern in that the action was brought against three individuals who, in fact, were the Secretary of Highways of the Commonwealth, the Pike County Superintendent of Highways, and an employe of the Department of Highways, on a cause of action arising out of the alleged nonperformance of their official duties. Defendant Appert testified that, upon receiving service of the complaint, he believed the action was brought against the Commonwealth of Pennsylvania; that his superiors had previously given him a general instruction, in the event of being served with legal papers involving accidents, to forward such papers to Mr. Rezzolla, the chief counsel; and that, accordingly, he forwarded the copies of the complaint which had been served upon him to Mr. Rezzolla, together with a letter of enclosure dated December 27,

1956, a copy of which was admitted in evidence and marked "Exhibit D-3." Defendant Martin, after being served on January 9, 1957, took up the matter with his superior, defendant Appert, who told him that it had been taken care of by sending the papers to Mr. Rezzolla. Martin kept his copy of the complaint and did nothing further. We think that defendants, as laymen, were adequately diligent in handling legal process which they conceived to be directed against their employer, the Commonwealth, rather than against themselves as individuals, a conception which apparently was shared by counsel for defendants when they drew the petition to open judgment. In Rapoch v. Rotella, etc., 88 D. & C. 553 (C. P. Lackawanna Co., 1954), the court opened a default judgment after defendant ignored the complaint, endorsed with a rule to answer, because four days after service she received a letter from her insurance carrier's attorney stating that "the lawsuit" had been settled. She mistakenly believed that this referred to the new action, whereas it referred to a subrogation action previously instituted by the insurance carrier, based upon the same accident. In opening the judgment, Eagen, J., said:

"While the letters referred to above were not intended to and did not refer to the lawsuit or claim herein, defendant innocently was of the opinion that it did. Hence, she ignored the complaint filed in this case and the notice thereon that it required an answer.

"We finally understand how under the circumstances she was misled and how any lay person not knowing the mechanics of the law might fall into the same misapprehension."

No authority directly in point has been found, but counsel for plaintiffs seek to draw an analogy between this case and the situation where an insured defendant, on being sued, relies upon the insurance company

and its counsel to defend him: Colacioppo v. Holcombe, 166 Pa. Superior Ct. 186 (1950). There, within one week after service of the complaint, the defendant referred the matter to his attorney who advised him that he was covered by automobile liability insurance. Through the insurance broker, accident report forms were filled out and forwarded to the company. When the company attorneys attempted to enter their appearance on September 2, 1948, they discovered that a default judgment had been entered on August 26th. The lower court *discharged* defendant's rule to open judgment. On appeal, the Superior Court affirmed, and Dithrich, J., said:

"Assuming, *arguendo*, in the instant case, that the failure was chargeable to the insurance broker, or the insurance company's attorneys, a clear abuse of discretion on the part of the learned court below would have to appear before we would have the right to reverse. Plaintiffs could not be expected to wait indefinitely until it could be settled by the defense whether the action was to be defended by the defendant personally or by his insurance carrier, before proceeding to judgment."

The same principle, that action of the lower court will not be reversed in the absence of abuse of discretion, was applied by the Supreme Court to sustain an order *opening* judgment in Scott v. McEwing, 337 Pa. 273 (1940). In Colacioppo and Scott, supra, defendants were conscious of a substantial personal relationship to the actions, and relied upon the administrative-legal complex of the insurance company to defend them; whereas, in the instant case, defendants were conscious only of a technical relationship to an action in which they believed the Commonwealth of Pennsylvania to be the real party defendant. Consequently, their failure to check upon the progress of the proceeding after the papers had been transmitted to the chief counsel should

not be considered a fatal want of diligence on their part.

The next point in the explanation of the delay is not entirely clear. While it appears that the papers did reach the chief counsel, the manner in which they reached him is the subject of conflict between the averments in the petition, the testimony of defendants' witnesses, and exhibits offered at the taking of depositions. Earlier in this opinion, we observed that the verification of the petition was made on May 16, 1958, not by defendants, but by one of their counsel, Mr. Kilimnik. We may assume that he derived his information from the office of the chief counsel and from the interview on May 13, 1958, at the Scranton district office between himself, Mr. Cunliffe and defendant Ernest Appert. Paragraph 6 of the petition, drawn up within the next three days, averred:

"6. That the petitioners, upon being served with copies of the complaint, and relying upon the fact that the matters complained of by the plaintiffs were directly related to their employment by the Commonwealth, turned over the said complaints to the District office of the Department of Highways in Scranton, Pennsylvania, for appropriate action."

Fifteen months later, on August 25, 1960, depositions in support of the petition were taken. On August 23, 1961, counsel for defendants filed a petition to amend the original petition to aver that Ernest Appert forwarded the complaint directly to Chief Counsel John R. Rezzolla, Jr. Paragraph 4 stated:

"4. That the amendment is sought in order to conform the petition to the testimony presented at the depositions by the said Ernest Appert and Leslie Martin. . . ."

At the taking of depositions, Defendant Appert testified:

"A. I transferred the complaint to Mr. Rezzolla in Harrisburg."

The testimony of Chief Counsel John R. Rezzolla, Jr., however, was consistent with the averments of the original petition. He stated that in the latter part of December 1956 there was transmitted from the "front office" of the Secretary of Highways a trespass complaint which had been mailed to Mr. Joseph Lawler, Secretary of Highways, with regard to an accident which occurred in Pike County, and that on January 2, 1957, he transmitted a copy of that complaint to Mr. Joseph Donnelly, Deputy Attorney General and liaison officer for the Department of Highways in the Department of Justice, with a suggestion that local counsel in Pike County be appointed to defend the action. A copy of this letter, marked "Exhibit D-1" was admitted in evidence. Mr. Rezzolla testified that he searched the files of the Department of Highways and found nothing except the copy of this letter. On cross-examination, he admitted that he heard nothing more and paid no further attention to this matter from January 2, 1957, until it was again called to his attention about May, 1958. He stated that Mr. Donnelly is no longer with the Department and that he has no idea where Mr. Donnelly lives.

From this, it is apparent that the petition to amend the original petition "to conform the petition to the testimony presented" must be dismissed in view of the conflict in the testimony of defendants' own witnesses. This conflict, of itself, might be of little significance, since it appears that Mr. Rezzolla did receive the papers; but, taken together with the complete absence of any attempt to account for what happened to the matter after referral to Mr. Donnelly, it adds up to an unsatisfactory explanation of the default. In exercising its equitable discretion, the court is entitled to a full disclosure of the facts. We think Mr. Donnelly

could have been located without much difficulty. His home address appears in volume 92 of the Legislative Manual for 1955-56, and it is probable that a communication directed there would have reached him. Possibly, he could have shed additional light on the situation, and he should have the opportunity to rebut or qualify the inference that the entire default was his responsibility. It is conceivable that the default resulted, not from mere inadvertence, but from deliberate and considered action. In Kanai v. Sowa, 109 Pa. Superior Ct. 426 (1933), the Superior Court affirmed an order dismissing a petition to open judgment, and Baldrige, J., late P. J., said:

"This judgment was not due to an oversight, an unintentional omission to act, or a mistake of the rights and duties of the defendant, but was the result of a decision, after deliberation, not to defend. As the lower court well says: 'To adopt and apply such a rule in litigation would involve the courts in constant setting aside of proceedings on the alleged ground that parties had been ill advised by their counsel. There would be no certainty in procedure, and no end to litigation. We are satisfied, therefore, that the instant case does not present such a ground for opening the judgment as is approved in the cases we have hereinbefore considered.' "

But see Hargrove v. Addison, 78 D. & C. 234 (C. P. Montgomery Co., 1950), where a lower court arrived at a different result.

The next consideration is whether or not defendants have presented a meritorious defense to the complaint. In assumpsit actions, this is an indispensable requirement for opening a default judgment: Carrozza v. Girard Chevrolet Co., 200 Pa. Superior Ct. 502, 190 A. 2d 577, 579 (1963); Silent Auto Corp. of Northern New Jersey v. Folk, 97 Pa. Superior Ct. 588, 591 (1930); Brown & Bigelow, Inc. v. Borish, 165 Pa.

Superior Ct. 308, 310 (1949). In trespass actions, the rule is subject to the qualification stated in Scott v. McEwing, 337 Pa. 273 (1940), by Mr. Justice Barnes:

". . . in trespass actions, no affidavit of defense being necessary, it appears to be the practice *in cases where the equities are clear*, that the court in its discretion *may* grant the petition to open the judgment without requiring the defendant to set forth the exact nature of his defense." (Italics supplied.)

This decision was followed in Kuntz v. Lanbar Hotel Co., Inc., 380 Pa. 90, 110 A. 2d 249, 251 (1955). In a number of trespass cases where defendants voluntarily offered a meritorious defense, the courts have considered this a persuasive factor in supporting an order opening judgment: Borjes v. Wich, 171 Pa. Superior Ct. 505, 507 (1952), res adjudicata; Rapoch v. Rotella, etc., 88 D. & C. 553, 554, 555 (C. P. Lackawanna Co., 1954); Hargrove v. Addison, 78 D. & C. 234 (C. P. Montgomery Co., 1950), settlement; but see Foster v. Nixon, 194 Pa. Superior Ct. 572 (1961), order opening judgment reversed, notwithstanding a notarized release, signed with a "X" by an illiterate plaintiff who died before the petition to open judgment was considered.

In the instant case, the petition contained a denial of negligence, paragraph 11; and both defendants gave testimony at the taking of depositions which was intended to show a meritorious defense. The substance of it is that defendants had placed proper barricades with the sign "Road Closed" near the site of the accident, but that third parties, unknown and unidentified, had molested, moved, or destroyed the barricades prior to the accident.

Defendant Appert testified that, at the time of Hurricane Diane, he was superintendent of maintenance for Pike County. Both defendants were acquainted with the nature of the wash-out before the accident

occurred and described the drop from the normal road level to be approximately 30 to 40 feet. Defendant Appert testified that special personnel erected barricades at both ends of the interruption on Route 958 caused by the wash-out; that he last saw the barricades in place in mid September 1955, while making an inspection in connection with the proposed relocation of Route 958; and that defendant Leslie Martin had direct supervision over the barricades at the site of the accident. Defendant Martin was familiar with the site both before and after the accident. He described it:

"A. Well it was a very hazardous condition over there. After the flood had gone through it was almost unbelievable unless you was there to see it. In this particular case where this accident happened, I would say it was, well, maybe 30 or 40 feet deep . . ."

Defendant Appert testified that two barricades had been erected: one near the intersection of Route 958 with the township road, and a second one about 150 to 200 feet from the wash-out. The first was a horse, consisting of a 14-foot horizontal member, to which a "Road Closed" sign was nailed; one end of which was supported by two legs and the other end fastened to a tree. To this description, defendant Martin added that the first barricade also had a reflector and a flag, and that the second was a half barricade, with a flag and a "Road Closed" sign, located about 150 feet from the accident site.

The accident occurred on Sunday, October 30, 1955. Defendant Martin testified that he made periodic inspections of the barricades every week or 10 days on Wednesdays or Thursdays. He last saw the barricades in place three or four days before the accident. He learned of the accident, not from personal observation while on an inspection trip, or from a communication directed to him by his superior defendant Appert, but from what he "heard". He testified:

"Q. How many days after the accident did you get up there?

"A. I would say after I heard about it in—I think it was about, I would say, a week or ten days after I really heard about it that I was back up there again due to working conditions.

"Q. And during that time, there was no barricade there at all, was there?

"A. Oh, yes. I had put another one up.

. . .

"Q. When was that?

"A. This was after I got back up after the accident happened."

Meanwhile, defendant Appert learned of the accident, not from defendant Martin who was in charge of the area, but from an account he read in the local newspaper on a Wednesday or Thursday of the following week. *Two or three days after receiving this information,* he went to the scene of the accident. He testified:

"A. I observed the wreck of the car, which still remained at the foot of the slope, and the barricade was set to the side, if I recall correctly."

On cross examination, he testified:

"Q. What was the condition of the barricade when you saw it after the accident? I believe you said the barricade was on the side of the road when you saw it.

"A. This is my recollection. As to the condition, I cannot say anything.

"Q. . . . is it possible you did not see a barricade there after the accident, if it is only your recollection?

. . .

"A. It is possible, yes."

Defendant Martin testified that, on going to the scene of the accident, he found his barricade gone and, 100 feet beyond the place where it should have been, he found one of the "Road Closed" signs in the ditch

on the left hand side of the road. It does not appear, from the testimony, that defendant Appert and defendant Martin ever communicated with each other, after learning of the accident, to consider what steps should be taken to prevent similar accidents from happening at the same place. On cross-examination, defendant Appert testified:

"Q. Are you familiar with the fact that the day after the accident the Highway Department erected a sign some distance from the scene of the accident stating 'Road Closed'?

"A. Well, that is possible.

"Q. But you do not know of your own knowledge?

"A. No."

In seeking to exonerate themselves, both defendants testified that on a number of occasions prior to the accident, third persons had tampered with the barricades. Defendant Appert testified:

"Q. You say the last time you inspected the barricades at the site of the accident was around the middle of September, 1955?

"A. Yes.

"Q. Did you receive any information from that time until the date of the accident of any lack of barricades at that site?

. . .

"A. I cannot answer directly on this—between those two dates—but in general we received notices of barricades throughout the county."

Defendant Martin testified:

"Q. You say you found those barricades thrown in the creek?

. . .

"A. That is correct. And right where this gentleman went through this night there has been several times that the barricade has been molested; it has been through right around.

. . .

"Q. Now, with respect to the two barricades that were directly in the path that Mr. and Mrs. Simonson had travelled on—stick to those two—how many times from the date of Hurricane Diane until the date of the accident did you find that those barricades had been molested?

"A. That would be pretty hard to tell. I would say approximately maybe three or four times after we had put them up . . ."

A jury may properly find a defendant negligent for an act which coupled with the act of a third person, results in injury to another if, under the circumstances, he should have anticipated the wrongful act of the third person. In Anderson v. Bushong Pontiac Company, Inc., 404 Pa. 382 (1961), a 14-year-old boy stole keys from defendant's used car lot. The theft was discovered and reported to police. Several days later, the boy returned and, using the stolen keys, drove one of the cars from the lot and subsequently struck and injured the plaintiff. The lower court sustained a demurrer to the complaint; but the Supreme Court reversed and held that the question of negligence and proximate cause was a question of fact for the jury. In Sims v. Strand Theater, 150 Pa. Superior Ct. 627 (1942), the Superior Court affirmed judgment for plaintiff, who had been injured by jostling theater patrons. It was held that the jury might properly find the theater management negligent in failing to provide sufficient ushers to control the patrons under the crowded conditions which the management should have anticipated. In Smith v. Hobart Manufacturing Company, 185 F. Supp. 751 (U. S. Dist. Ct. E. D. Pa., 1960), defendant manufacturing company made and sold an electrically powered meat grinder to plaintiff's employer, Holiday Frosted Food Company. When delivered, the grinder was equipped with a metal guard securely bolted over the aperture through which meat

was to pass to the grinding mechanism. The food company foreman had the guard removed in order to process a greater volume of meat. While plaintiff was operating the grinder, he accidently slipped and thrust his hand into the unguarded opening, resulting in injuries which required amputation of the hand and lower arm. The jury returned a verdict against both defendants. The manufacturing company moved for judgment n. o. v. on the ground that the injury was caused by the intervening act of the food company foreman in removing the guard, for which the manufacturing company was not legally responsible. The district court refused the motion, holding that if reasonable minds could differ on whether the agreed facts showed legal causation, the question is properly one for the jury to determine. This ruling was reiterated at a later stage in the proceedings: Smith v. Hobart Manufacturing Company, 194 F. Supp. 530, 532 (U. S. Dist. Ct. E. D. Pa., 1961) ; but was reversed by the Circuit Court of Appeals: 320 F. 2d 570 (U. S. Ct. of App., 3rd Cir., 1962). Ganey, Circuit Judge, said:

"Hobart does not seriously deny here that the machine with the guard off was dangerous to operate. . . . Did Hobart expect or should it have expected that Holiday would remove the guard and operate the machine without it? The trial court left that question to the jury to decide under the doctrine of foreseeability. . . . In our opinion, a Pennsylvania Court would conclude that there was not enough evidence from which the jury could infer that Hobart had reason, let alone strong reason, to expect that Holiday would remove the guard and operate the machine without it.

. . .

"If Hobart had reason to expect that Holiday would remove the guard, the fact that its removal was 'wilful and wanton' would not have made that act a superseding cause to Hobart's negligence. See Anderson

v. Bushong Pontiac Company, Inc., 404 Pa. 382, 171 A. 2d 771 (1961)."

In the instant case, there is no need to consider whether defendants had strong reason to *anticipate* that third persons might tamper with the barricades, for we have their own testimony that defendants had notice that third persons *actually were doing so.* Instead of constituting a meritorious defense, this testimony was an indictment for their failure to mount substantial barriers commensurate with the known hazards of this trap on Route 958.

Although it does not appear of record, the court is informed that defendant Appert is now deceased. This raises the question as to whether or not present counsel has the authority to act on behalf of this defendant: Talbot v. Ledgewood Circle Shopping Center, Inc., 194 F. Supp. 189 (U. S. Dist. Ct., E. D. New York, 1961). At least a final order should not be entered until such time as someone is qualified to act in this defendant's behalf. The death of Mr. Appert raises another question, namely, how will his death affect plaintiffs in the proof of their case?

Therefore, we shall not enter a final order at this time but set the matter down for further argument. The intervening time before argument will give the parties an opportunity to take such action as they deem necessary in regard to the death of defendant Appert, as well as provide the opportunity to make application to supplement the record with additional information if they so desire.

## Order

And now, October 15, 1963, the within matter is set down for further argument on November 18, 1963, in relation to the matters indicated in the within opinion.